IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2017

**BILLY JOE GREENWOOD v. TENNESSEE BOARD OF PAROLE**

**Appeal from the Chancery Court for Davidson County**
**No. 15-1497-III     Ellen Hobbs Lyle, Chancellor**

_____

**No. M2016-02059-COA-R3-CV**

_____

This appeal arises from the denial of parole to an inmate by the Tennessee Board of Parole ("the Board"). The inmate was convicted in 1990 of first degree murder and first degree burglary. The Board denied parole on the basis that the inmate's release at the time of the hearing would depreciate the seriousness of the crime for which he was convicted. The inmate filed a petition for writ of certiorari with the Davidson County Chancery Court ("trial court"), alleging violations of due process and equal protection. The trial court denied relief, determining that no grounds existed to disturb the Board's decision. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which RICHARD H. DINKINS, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Billy Joe Greenwood, Wartburg, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; and Thomas J. Aumann, Assistant Attorney General, for the appellee, Tennessee Board of Parole.

**OPINION**

I. Factual and Procedural Background

Billy Joe Greenwood is an inmate in the custody of the Tennessee Department of Correction, currently housed at the Morgan County Correctional Complex. In 1990, Mr.

Greenwood was convicted of first degree murder and first degree burglary. He was sentenced to life in prison for the murder conviction and six years of incarceration for the burglary conviction, with such sentences to be served concurrently.[1] On direct appeal, Mr. Greenwood's convictions were affirmed by the Tennessee Court of Criminal Appeals, which recited the following facts underlying Mr. Greenwood's original convictions:

> The record establishes that in April 1989, the defendant was quite distraught over his recent divorce from Alice Evonne Dishman and resulting separation from his young daughter. While in this troubled state of mind, the defendant began to consume excessive amounts of alcoholic beverages and drugs. During the day of 22 April 1989, he drank approximately two cases of beer, smoked marijuana, and ingested cocaine and valium.

> That evening, Greenwood broke into the home of Sherry Dishman, Alice Evonne Dishman's sister, and took a loaded .30-.30 caliber rifle. Rifle in hand, he sat on the hood of his car in front of her home waiting for his former wife to stop by.

> Sherry Dishman arrived first. She was accompanied by a male friend, Charles Haney. They did not observe Greenwood, and he permitted them to pass without incident.

> A short time later, David Dishman drove up, and Greenwood confronted him. After saying to Dishman, "You ain't Evonne, you son-of-a-bitch," he shot Dishman in the stomach. Leaving Dishman on the ground where he had fallen, the defendant went to the front door of the home, kicked it in, and entered.

> Once inside, he was met by Sherry Dishman and Haney. The rifle discharged as the three of them struggled over it. Unable to cock the rifle again, the defendant produced a knife and threatened to use it to kill them.

> Haney and Dishman were able to eject the defendant. Outside again, the defendant noticed that David Dishman was attempting to stand. Dishman reached out to the defendant, called his name, and apologized for whatever he had done to him. In response, the defendant said that they would die together and thereupon shot Dishman a second time. Dishman

---

[1] Mr. Greenwood was initially sentenced to consecutive sentences, which were later modified by the Court of Criminal Appeals to run concurrently. *See State v. Greenwood*, No. 01C01-9108-CC-00228, 1992 WL 38054, at *1 (Tenn. Crim. App. Mar. 3, 1992).

later succumbed to these wounds, and the defendant was arrested two days
later.

*State v. Greenwood*, No. 01C01-9108-CC-00228, 1992 WL 38054, at *1 (Tenn. Crim.
App. Mar. 3, 1992) (reinstated op.).[2]

According to Tennessee Board of Parole records, a parole hearing regarding Mr.
Greenwood was held on July 14, 2009, following which the Board denied parole upon
finding that Mr. Greenwood's release from custody at that time would have depreciated
the seriousness of his crime. The Board recommended that Mr. Greenwood complete or
participate in "anger [management], substance abuse [treatment], criminal thinking, etc.
programs," and a review hearing was scheduled for July 2015.

This second parole hearing, held on July 23, 2015, is at issue now on appeal. Mr.
Greenwood spoke during the hearing and requested that the Board release him from
custody on parole. Evidence presented at the hearing included the factual circumstances
concerning the criminal offense for which Mr. Greenwood is incarcerated, in addition to
signatures supporting and in opposition to parole; oral statements in support of parole
presented by Mr. Greenwood, two prison employees, and a friend of Mr. Greenwood's;
certificates of completion from various programs in which Mr. Greenwood had
participated while incarcerated, including Change Companies Residential Drug Abuse
Program, Victim Impact Program, Pro-Social Life Skills Program, and Behavioral
Therapeutic Community; letters both in support of and in opposition to Mr. Greenwood's
release on parole; and oral statements from Alice Dishman, Sherry Dishman, Charles
Haney, and a representative of the district attorney's office in opposition to Mr.
Greenwood's release.

Following the parole hearing, the hearing officer, Board member Tim Gobble,
informed Mr. Greenwood that he was voting to deny parole, having concluded that the
seriousness of Mr. Greenwood's crime would be depreciated by his release at that time.
When informing Mr. Greenwood of his recommendation, Mr. Gobble stated:

> Mr. Greenwood, after considering the totality of the circumstances here and
> your file, there [are] some things I want to commend you on. I do want to
> commend you on your institutional behavior and your efforts there.

---

[2] The opinion of the Court of Criminal Appeals regarding Mr. Greenwood's original convictions was
vacated and reinstated twice, each time to allow Mr. Greenwood to file a delayed Rule 11 Application to
the Tennessee Supreme Court regarding his original convictions. Mr. Greenwood filed an application for
permission to appeal to the Supreme Court on December 15, 1999, which was subsequently denied on
May 15, 2000. *See Greenwood v. State*, No. 01C01-9803-CR-00134, 1999 WL 975116, at *2 (Tenn. Ct.
Crim. App. Oct. 13, 1999), *perm. app. denied* (Tenn. May 15, 2000); *Greenwood v. Newberry*, No.
01C01-9803-CR-00134, 1999 WL 105099 (Tenn. Crim. App. Mar. 3, 1999).

I want to commend you on your program participation and your efforts there with your substance abuse and addiction issues and your admitted anger issues that you were no doubt dealing with at the point of this offense.

But I also cannot overcome at this time the seriousness of this offense where a young man was ruthlessly and needlessly gunned down by you not once, but twice, and the 18-year-old young man had no involvement in anything at all with what you were angry about, and had a full life ahead of him that was taken away from him senselessly and needlessly.

And you having served less than 30 years of a life conviction prevents me from voting to parole you at this time because of the seriousness of the offense in which you were convicted of.

To do so at this time would depreciate the seriousness of the crime of which you've been convicted and promote disrespect for the law. So my vote is to deny your parole and review it again in July of 2020. That's five years from now.

I do want to commend you on the efforts that you are making towards rehabilitation. I think you are showing some progress. I want to see that continue.

I appreciate the comments that the prison officials have made, and I know they don't do that lightly.

And so I think you have made some strides. But again, the seriousness of this offense just prevents [me from] voting to parole you at this time, having served less than 30 years of a life sentence.

Three additional Board members adopted Mr. Gobble's reasoning and voted unanimously to deny parole. On August 4, 2015, the Board provided Mr. Greenwood with written notice that parole had been denied and that his next parole hearing would be scheduled for July 2020. Mr. Greenwood filed an administrative appeal with the Board, which was ultimately denied. Following a review of the Board's file and an audio recording of the hearing, the Board reasoned that Mr. Greenwood's allegation that significant procedural errors had occurred at the parole hearing was unsubstantiated.

Mr. Greenwood subsequently filed a petition for writ of certiorari with the trial court. Upon the Board's notice of no opposition to the issuance of a writ of certiorari, the

trial court granted Mr. Greenwood's petition.[3]  In the trial court, Mr. Greenwood alleged that the Board's denial of parole violated "his Fourteenth Amendment right to due process of law under the United States Constitution and article one sections eight and nine of the Tennessee Constitution."  Mr. Greenwood also alleged that his equal protection rights were violated, arguing that other inmates who were similarly situated had been released on parole.

The trial court subsequently entered an order dismissing Mr. Greenwood's petition upon finding that "[t]he declination of parole based upon seriousness of the offense is supported by evidence in the hearing transcript in this case, describing [Mr. Greenwood's] murder of a defenseless eighteen year old who was not involved in the dispute between [Mr. Greenwood] and his ex-wife."  The court concluded that "the Board's final decision to decline parole based on the seriousness of the offense was proper pursuant to Tenn. Code Ann. § 40-35-503(b) and *Arnold* [*v. Tenn. Bd. of Paroles*, 956 S.W.2d 478 (Tenn. 1997).]."  The trial court further found that the Board's deferral of parole for five years was "not unlawful or arbitrary."  Regarding Mr. Greenwood's equal protection argument, the trial court concluded that a petition for writ of certiorari was "an improper vehicle for such a claim."  Mr. Greenwood timely appealed to this Court.

## II.  Issue Presented

Mr. Greenwood presents one issue on appeal, which we have restated as follows:

Whether the trial court erred by denying relief to Mr. Greenwood upon his petition for writ of certiorari.

## III. Standard of Review

Inmates may use the common law writ of certiorari to seek review of decisions made by prison disciplinary boards, parole eligibility review boards, and other similar tribunals.  *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003).  The common law writ of certiorari has been used to "remedy (1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion."  *Id.*

---

[3] We note that the trial court's issuance of a writ of certiorari did not adjudicate the issues presented within the petition.  *Gore v. Tenn. Dep't of Corr.,* 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003).  Instead, the issuance of the writ of certiorari was "simply an order to the lower tribunal to file the complete record of its proceedings so the trial court can determine whether the petitioner is entitled to relief."  *Keen v. Tenn. Dep't of Corr.*, No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008) (citing *Hawkins v. Tenn. Dep't of Corr.,* 127 S.W.3d 749, 757 (Tenn. Ct. App. 2002); *Hall v. McLesky,* 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001)).

The decision of whether to grant or deny parole to an inmate is vested with the Board, not the courts. *Hopkins v. Tenn. Bd. of Paroles & Prob.*, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001). Therefore, judicial review of a Board's decision concerning parole is limited. *Id.* Our Supreme Court has elucidated:

> Judicial review of a parole decision made by the Board is narrow; it is limited to consideration of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Tenn. Code Ann. § 27-8-101; *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). The reviewing court does not inquire into the intrinsic correctness of the Board's decision, reweigh the evidence, or substitute its judgment for that of the Board. *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008); *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001). The court considers only the manner in which the decision was made. *Stewart*, 368 S.W.3d at 463 (citing *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994)).

*Brennan v. Bd. of Parole*, 512 S.W.3d 871, 873 (Tenn. 2017). Consequently, "the courts will not use the common-law writ to grant relief when the Board's decision was arrived at in a constitutional and lawful manner." *Hopkins*, 60 S.W.3d at 82 (citing Tenn. Code Ann. § 40-28-115(c) (1997); *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Review Bd.,* 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994)).

Furthermore, we recognize that Mr. Greenwood is a *pro se* litigant and respect his decision to proceed self-represented. With regard to self-represented litigants, this Court has explained:

> *Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden. *Gray v. Stillman White Co.,* 522 A.2d 737, 741 (R. I. 1987). Conducting a trial with a *pro se* litigant who is unschooled in the intricacies of evidence and trial practice can be difficult. *Oko v. Rogers,* 125 Ill. App.3d 720, 81 Ill. Dec. 72, 75, 466 N.E.2d 658, 661 (1984). Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training.

*Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the

courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). This Court must "be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Id.* Furthermore, "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *See Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009), *perm. app. denied* (Tenn. May 20, 2010) (quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)).

## IV. Due Process

Mr. Greenwood contends that the Board erred by denying his right to due process by failing to provide specific reasons for the denial of parole and that the Board did not afford proper deference to Mr. Greenwood's progress while in prison or his ability to successfully reintegrate into society. Mr. Greenwood also argues that the Board erred by improperly considering his original offense when making its parole determination. Upon careful review, we conclude that the trial court did not err by denying relief to Mr. Greenwood in this regard.

Regarding due process, our Supreme Court has explained:

> Both the United States and Tennessee Constitutions protect the right to due process of law. Section 1 of the Fourteenth Amendment to the United States Constitution provides, "No State shall make or enforce any law which . . . deprive[s] any person of life, liberty, or property, without due process of law . . . ." Article I, section 8 of the Tennessee Constitution states, "[N]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land." We have determined that this provision of the Tennessee Constitution is "synonymous" with the Due Process Clause of the Fourteenth Amendment. *Gallaher* [*v. Elam*], 104 S.W.3d [455,] 463 [Tenn. 2003)] (citing *Riggs* [*v. Burson*], 941 S.W.2d [44,] 51 [(Tenn. 1997)]).

*Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707, 715 (Tenn. 2017).

Moreover, as our Supreme Court has further elucidated:

> Prisoners do not have an absolute right to be released on parole. *Hopkins v. Tenn. Bd. of Paroles & Prob.*, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001) (citing *Graham v. State*, 202 Tenn. 423, 304 S.W.2d 622, 623–24 (1957)). Parole is a privilege, not a right. Tenn. Code Ann. §§ 40-28-

117(a)(1), 40-35-503(b); Tenn. Bd. Parole R. 1100-01-01-.02(2); *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").

*Brennan*, 512 S.W.3d at 873.

Mr. Greenwood claims that he has a liberty interest in the grant of parole. It is well settled that an inmate convicted of a crime has no fundamental right to be released on parole prior to the expiration of his or her sentence. *See* Tenn. Code Ann. § 40-35-503(b) (2014); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Hughes*, 514 S.W.3d at 719. Although an inmate has no fundamental right or liberty interest in being released on parole prior to the expiration of his or her sentence, this Court has determined that "the Board of Paroles is obligated to follow the laws of the State of Tennessee as well as its own rules, and that inmates are entitled to whatever due process arises as a result of the proper application of the state statutes and the rules." *Wells v. Tenn. Bd. of Paroles*, 909 S.W.2d 826, 829 (Tenn. Ct. App. 1995).

We first address Mr. Greenwood's argument that the Board should have provided him with the reasons for denial of parole "in detail and not in conclusory terms." Tennessee Board of Parole Rule 1100-01-01-.08(3) provides in pertinent part that the Board "shall notify the inmate, in written form, of its final decision and reasons for the decision." Tenn. Comp. R. & Regs. 1100-01-01-.08(3). As a state prisoner in Tennessee, Mr. Greenwood has no right to receive a specific and detailed statement of reasons for the denial of parole. *See Perry v. Bd. of Paroles*, No. M1998-01018-COA-R3-CV, 2001 WL 46990, at *2 (Tenn. Ct. App. Jan. 22, 2001). In a similar appeal, this Court determined as follows:

> [The inmate] argues that the Board erred by failing to provide him with an adequate statement of the evidence that the Board relied on in making its decision. This argument fails . . . because the Board gave two adequate, legally-supported justifications for denying [the inmate's] parole, namely the severity of his offense and the risk of adverse effects on institutional discipline. No more definite statement was required.

*Hopkins*, 60 S.W.3d at 83 (emphasis added); *see also Brennan*, 512 S.W.3d at 876.

At the conclusion of Mr. Greenwood's parole hearing, the hearing officer informed Mr. Greenwood of his recommendation that the Board deny parole because Mr. Greenwood's release from incarceration at the time of the hearing would depreciate the seriousness of the offense or promote disrespect of the law. The Board subsequently delivered its official decision to deny parole to Mr. Greenwood on August 4, 2015,

providing as reason for denial that Mr. Greenwood's release from prison at that time "would depreciate the seriousness of the crime of which [Mr. Greenwood] stands convicted or promote disrespect of the law." Upon our review of the record, we determine that the trial court correctly found that the Board provided a legally sufficient reason for its denial of Mr. Greenwood's parole. Mr. Greenwood was not entitled to receive a more detailed or specific statement.

Mr. Greenwood also argues that the decision made by the Board was arbitrary, illegal, or fraudulent because there was no "meaningful consideration of [Mr. Greenwood's] eligibility to reintegrate into society." The Board may consider the following factors when making parole determinations:

(a)     The nature of the crime and its severity;

(b)     The inmate's previous criminal record, if any;

(c)     The inmate's institutional record;

(d)     The views of the appropriate trial Judge and the District Attorney General, who prosecuted the case;

(e)     The inmate's circumstances if returned to the community;

(f)     Any mitigating or aggravating circumstances surrounding the offense;

(g)     The views of the community, victims of the crime or their family, institutional staff, probation and parole officers, or other interested parties;

(h)     The inmate's training, including vocational and educational achievements;

(i)     The inmate's employment history, his or her occupational skills, including any military experience, and the stability of his or her past employment;

(j)     The inmate's past use of narcotics, or past habitual and excessive use of alcohol;

(k)     The inmate's behavior and attitude during any previous experience on probation or parole and the recentness of such experience;

- 9 -

(l)     An objective advisory parole predication guideline system to adequately assess the risk an inmate poses to society and his or her potential for parole success;

(m)     Any other factors required by law to be considered or the Board determines to be relevant.

Tenn. Comp. R. & Regs. 1100-01-01-.07(1). Tennessee Code Annotated § 40-35-503(b) and the Rules of the Tennessee Board of Parole further provide that after applying the various factors for consideration,

the Board shall deny the inmate's release on parole if it determines that:

(a)     There is a substantial indication that the inmate will not conform to the conditions of his or her parole;

(b)     Release from custody at this time would depreciate the seriousness of the crime of which the person stands convicted or promote disrespect for the law;

(c)     Release at this time would have a substantially adverse effect on institutional discipline; or

(d)     The person's continued correctional treatment, medical care, or vocational or other training in the institution, will substantially enhance the person's capacity to lead a law-abiding life when given release at a later time.

Tenn. Comp. R. & Regs. 1100-01-01-.07(4).

The record in this action reflects that the hearing officer considered both the severity of the offense and Mr. Greenwood's accomplishments during incarceration. Although the Board was permitted to consider whether Mr. Greenwood would be able to successfully reintegrate into society as a factor when making its parole determination, the Board was not required to consider this factor. *See* Tenn. Comp. R. & Regs. 1100-01-01-.07(1). At the conclusion of the hearing, Mr. Gobble informed Mr. Greenwood of his vote and recommendation to the Board that parole be denied but commended Mr. Greenwood on his "institutional behavior and [his] efforts there," specifically mentioning Mr. Greenwood's participation and efforts in addressing "substance abuse and addiction issues and [his] admitted anger issues." According to Mr. Gobble, however, when making his decision to recommend that parole be denied, he was unable to "overcome at this time the seriousness of this offense where a young man was ruthlessly and needlessly gunned down by [Mr. Greenwood], not once, but twice." Pursuant to Tennessee Code

Annotated § 40-35-503(b), the Board was permitted to deny parole based on the seriousness of Mr. Greenwood's crime. Accordingly, Mr. Greenwood's argument that the Board's decision was arbitrary, illegal, or fraudulent because it did not consider his ability to reintegrate into society is without merit.

Mr. Greenwood further argues that no evidence supports the Board's decision to deny parole. However, upon a review of the record, we disagree. In writ of certiorari proceedings, a court does not have the authority to reweigh the evidence presented to the Board or substitute its own judgment for that of the Board. *See Young v. City of LaFollette*, 353 S.W.3d 121, 124 (Tenn. Ct. App. 2011). However, if no material evidence exists to support the Board's decision, it is arbitrary or illegal. *Id.* Courts have consistently determined that the Board is permitted to deny parole if the Board concludes that the inmate's release on parole at that time would depreciate the seriousness of the crime for which he or she stands convicted. *See Brennan*, 512 S.W.3d at 875; *Arnold*, 956 S.W.2d at 482; *Hopkins*, 60 S.W.3d at 83; *Robinson v. Traughber*, 13 S.W.3d 361, 363 (Tenn. Ct. App. 1999). Ergo, the seriousness of the crime constitutes material evidence upon which the Board may rely to deny parole. In fact, Tennessee Code Annotated § 40-35-503(b)(2) specifically requires the Board to deny parole when the inmate's release would depreciate the seriousness of the inmate's crime or promote disrespect for the law. Although Mr. Gobble commended Mr. Greenwood for his efforts during his incarceration, he and the Board members were unable to recommend release on parole at that time. We discern no error concerning the basis on which the Board made its decision and determine that material evidence existed to support the Board's decision.

Additionally, Mr. Greenwood argues that the Board's decision to deny parole is a "fundamentally improper re-consideration of the original sentence." According to Mr. Greenwood, his sentence "*intrinsically incorporated* the minimum number of years the sentencing judge and the statute demanded." He argues that "[a]fter the minimum passed, the *only* rational considerations and factors that should be considered . . . were the conduct of [Mr. Greenwood] during his confinement and his likelihood of a proper reintegration into society" (emphasis in original). The Tennessee Supreme Court rejected a similar argument posited by an inmate in *Arnold*, 956 S.W.2d at 482. In *Arnold*, the Court determined that "consideration of the seriousness of the offense at both sentencing and parole does not violate double jeopardy principles because denial of parole does not constitute 'another' punishment, but rather perpetuates a validly imposed sentence." *Id.* (citing *Kell v. U.S. Parole Comm'n,* 26 F.3d 1016, 1020 (10th Cir. 1994); *Averhart v. Tutsie,* 618 F.2d 479, 483 (7th Cir. 1980)).

In contrast to Mr. Greenwood's argument that the Board erred in considering his original offense when making its parole determination, the law requires the Board to consider the severity of the original offense to determine if the inmate's release would

depreciate the seriousness of his crime. *See* Tenn. Code Ann. § 40-35-503(b). Therefore, we find Mr. Greenwood's argument in this regard to be without merit.

Finally, to the extent that Mr. Greenwood argues that the Board's decision to defer parole for a period of five years is arbitrary or illegal, we also determine this argument to be without merit. The Board's decision of when to schedule a rehearing date following a denial of parole is a fact-intensive inquiry, the intrinsic correctness of which is not reviewable by the court. *See Turner v. Tenn. Bd. of Prob. & Parole*, No. M2009-01908-COA-R3-CV, 2010 WL 3928617, at *3 (Tenn. Ct. App. Oct. 6, 2010) (citing *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994)). The trial court may only review the Board's decision to defer parole consideration for five years to determine if it acted illegally, arbitrarily, or fraudulently. *See Brennan*, 512 S.W.3d at 873.

This Court has previously determined that a five-year deferral for parole consideration is not an arbitrary decision by the Board. *See Gordon v. Tenn. Bd. of Prob. & Parole*, No. M2006-01273-COA-R3-CV, 2007 WL 2200277, at *4 (Tenn. Ct. App. July 30, 2007); *Berleue v. Tenn. Bd. of Prob. & Parole*, No. M2005-00363-COA-R3-CV, 2006 WL 1540255, at *4 (Tenn. Ct. App. June 5, 2006). Additionally, this Court has also determined in multiple appeals that a six-year deferral of parole consideration is also not an arbitrary decision. *See Bibbs v. Tenn. Bd. of Parole*, No. M2015-01755-COA-R3-CV, 2016 WL 1650302, at *5 (Tenn. Ct. App. Apr. 22, 2016); *Hendricks v. Tenn. Bd. of Prob. & Parole*, No. M2010-01651-COA-R3-CV, 2011 WL 2135445, at *5 (Tenn. Ct. App. May 25, 2011); *York v. Tenn. Bd. of Prob. & Parole*, No. M2005-01488-COA-R3-CV, 2007 WL 1541360, at *6 (Tenn. Ct. App. May 25, 2007). However, this Court has determined that deferring parole consideration for a period of ten or twenty years is arbitrary. *See Baldwin v. Tenn. Bd. of Paroles*, 125 S.W.3d 429, 434 (Tenn. Ct. App. 2003) (determining that a twenty-year deferral of parole "constitute[d] an arbitrary withdrawal of the power to parole from future Board members."); *York v. Tenn. Bd. of Prob. & Parole*, No. M2003-00822-COA-R3-CV, 2004 WL 305791, at *4 (Tenn. Ct. App. Feb. 17, 2004) (determining that "to postpone a review of [parole] for a decade is . . . an arbitrary decision."). In the case at bar, we determine that the trial court did not err by failing to provide relief to Mr. Greenwood on this issue.

Upon a thorough review of the record, we determine that Mr. Greenwood's right to due process of law was not violated and that the trial court did not err in declining to provide relief to Mr. Greenwood in this regard.

## V. Equal Protection

Mr. Greenwood further contends that the Board violated his constitutional right to receive equal protection under the law. The United States Constitution provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. amend. XIV, § 1. As the United States Sixth Circuit Court of Appeals has explained regarding equal protection:

> To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.,* 470 F.3d 286, 299 (6th Cir. 2006). As we have held, the "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 260 (6th Cir. 2006).

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

The Tennessee Constitution also guarantees equal protection of the laws. Article I, section 8 of the Tennessee Constitution provides: "That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Article XI, section 8 further provides:

> The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie[s], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

The Tennessee Supreme Court has instructed:

> This Court has concluded that Article I, section 8 and Article XI, section 8 of the Tennessee Constitution provide "essentially the same protection" as the Equal Protection Clause of the United States Constitution. *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993). Moreover, when analyzing the merit of an equal protection challenge, this Court has utilized the three levels of scrutiny—strict scrutiny, heightened scrutiny, and reduced scrutiny, which applies a rational basis test—that are employed by the United States Supreme Court depending on the right that is asserted. *State v. Tester*, 879 S.W.2d 823, 828 (Tenn. 1994) (citations omitted). "Strict scrutiny applies when the classification at issue: (1) operates to the peculiar disadvantage of a suspect

class; or (2) interferes with the exercise of a fundamental right." *Gallaher*, 104 S.W.3d at 460 (citation omitted). Heightened scrutiny applies to cases of state sponsored gender discrimination. *See United States v. Virginia*, 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (quoting *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982)); *Mitchell v. Mitchell*, 594 S.W.2d 699, 701 (Tenn. 1980). Reduced scrutiny, applying a rational basis test, applies to all other equal protection inquiries and examines "whether the classifications have a reasonable relationship to a legitimate state interest." *Tenn. Small Sch. Sys.*, 851 S.W.2d at 153 (quoting *Doe v. Norris*, 751 S.W.2d 834, 841 (Tenn. 1988)).

*Hughes*, 514 S.W.3d at 715-16.

In the instant action, the trial court found, *inter alia*, regarding Mr. Greenwood's equal protection claim: "To the extent that Petitioner attempts to claim that the Board violated the Equal Protection Cla[use], the Petition for Writ of Certiorari is an improper vehicle for such a claim." The trial court is correct that a petition for writ of certiorari is not the proper vehicle for an original claim seeking damages for an equal protection violation. *See Brown v. Tenn. Bd. of Prob. & Parole*, No. M2005-00449-COA-R3-CV, 2007 WL 2097548, at *4 (Tenn. Ct. App. July 6, 2007) ("An appellate cause of action (*i.e.,* a petition for common-law writ of certiorari) cannot be joined with an original cause of action (*i.e.,* a complaint for inverse condemnation).") (citing *Winkler v. Tipton Cty. Bd. of Educ.,* 63 S.W.3d 376, 383 (Tenn. Ct. App. 2001), *superseded by statute on other grounds as stated in Emory v. Memphis City Sch. Bd. of Educ.*, 514 S.W.3d 129 (Tenn. 2017); *Goodwin v. Metro. Bd. of Health,* 656 S.W.2d 383, 386-87 (Tenn. Ct. App. 1983)). Nevertheless, Mr. Greenwood refers to the government's "arbitrary actions" in his equal protection argument. Inasmuch as Mr. Greenwood argues that his equal protection rights were violated by the Board and that the Board's decision to deny parole was discriminatory and thereby arbitrary or illegal, we determine that his equal protection argument should be considered. *See, e.g., Brown*, 2007 WL 2097548, at *4-5. Because the issue is one of law, we will consider whether Mr. Greenwood's equal protection rights were violated by the Board's decision to deny parole.

Mr. Greenwood claims that "similarly situated individuals were actually granted parole by the same board members in cases which satisfied less of a positive candidate than he." Despite Mr. Greenwood's conclusory allegations that he was treated differently than other inmates, the record before us does not contain any evidence to support his argument. Mr. Greenwood has failed to present the trial court or this Court with any specific examples which would have supported the existence of any similarly situated individuals to whom he refers.

Assuming, *arguendo*, that Mr. Greenwood was denied parole while other similarly situated inmates were granted parole, we determine that the Board had a rational basis for denying parole. We review the Board's decision for rationality, and the Board's decision will be upheld unless the Board lacks a rational basis for its decision. *See Harrison v. Schrader*, 569 S.W.2d 822, 825 (Tenn. 1978) ("Under [the rational basis] standard, if some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify it, the classification will be upheld."); *see also State v. Tester,* 879 S.W.2d 823, 828 (Tenn. 1994); *Tenn. Small Sch. Sys. v. McWherter,* 851 S.W.2d 139, 153 (Tenn. 1993). We note that for purposes of equal protection, inmates are not a suspect class, such as race, nationality, or alienage, which would mandate strict scrutiny, or a quasi-suspect class, such as gender or illegitimacy, which would require heightened scrutiny. *See Hughes*, 514 S.W.3d at 720; *Gallaher v. Elam*, 104 S.W.3d 455, 461 (Tenn. 2003). Furthermore, because inmates do not have a fundamental right or liberty interest in parole, strict scrutiny would not apply in this matter. *See* Tenn. Code Ann. § 40-35-503(b); *Hughes*, 514 S.W.3d at 720.

Parole hearings are fact-intensive proceedings and focus specifically on the original crime and circumstances surrounding the individual seeking parole. *See Hopkins*, 60 S.W.3d at 83. Following a hearing, the Board in this instance considered the evidence presented and determined that parole should be denied due to the seriousness of Mr. Greenwood's crime. The Board's decision to deny Mr. Greenwood's parole based on its determination that releasing Mr. Greenwood on parole would depreciate the seriousness of the crime for which he was convicted and promote disrespect of the law was a rational basis for denying parole.

Because the Board had a rational basis for its decision denying Mr. Greenwood's parole, the Board's decision was not illegal or arbitrary. Therefore, although the trial court should have considered Mr. Greenwood's equal protection claim insofar as it was a claim of discrimination that if successful, would have rendered the Board's decision illegal or arbitrary, we determine any error in this regard to be harmless because Mr. Greenwood's equal protection argument is unavailing.

## VI. Conclusion

For the reasons stated above, we affirm the judgment of the trial court denying relief to Mr. Greenwood in this matter. This case is remanded to the trial court for collection of costs below. Costs on appeal are taxed to the appellant, Billy Joe Greenwood.

_____
THOMAS R. FRIERSON, II, JUDGE