IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2018

## JOHNNY McCLAIN, JR. v. TENNESSEE BOARD OF PAROLE ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 17-0281-IV      Russell T. Perkins, Chancellor**

_____

**No. M2018-00205-COA-R3-CV**

_____

This is an appeal from the dismissal of an inmate's petition for common law writ of certiorari. The Tennessee Board of Parole denied petitioner parole, citing the seriousness of the offense, the substantial risk that petitioner would not conform to the conditions of his release, the adverse effect his release would have on institutional discipline, and his need to complete therapeutic community. Petitioner appealed the Board's decision by petition for writ of certiorari. The petition was dismissed by the trial court, which found that the petitioner had failed to present any facts that would support a claim that the Board acted illegally, fraudulently, arbitrarily, or in excess of their jurisdiction. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined

Johnny McClain, Hartsville, Tennessee, Pro se.

Herbert H. Slatery III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Charlotte Davis, Assistant Attorney General, Nashville, Tennessee, for the appellees, Tennessee Board of Parole, Zane Duncan, Gary M. Faulcon, Ma'Tessa Fields, Helen D. Ford, Tim Gobble, Gay Gregson, Roberta Nevil Kustoff, Richard Montgomery, and Barrett Rich.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Johnny McClain ("Petitioner") is an inmate in the custody of the Tennessee Department of Correction, serving 35 years for especially aggravated robbery, 15 years for aggravated robbery, 10 years each for two counts of aggravated assault, and 15 years for facilitation of an attempted first-degree murder—all of which occurred on August 1, 1994. On that date, James Walsh, his wife, and his two sons—ages seven and two at the time—were on their way home from a vacation trip to Florida and stopped in Nashville to spend the night. The family planned to visit Opryland USA the next day, so Mr. Walsh had reserved a room at the Ramada Inn on Music Valley Drive near the theme park. The family arrived at the hotel, and, while unloading their luggage, Mr. Walsh noticed a man approaching him. The man then pulled out a gun, pointed it at Mr. Walsh, and demanded money. Mr. Walsh complied. The gunman, however, became angered by the small amount Mr. Walsh had given him and pointed the gun at Mrs. Walsh and the children, threatening to shoot them.

In an effort to protect his family, Mr. Walsh lunged at the gunman. In the ensuing struggle, the gun discharged three times, and one of the bullets struck Mr. Walsh in the left shoulder, lodging itself dangerously close to his spine. The gunman fled, but not before firing a fourth shot at Mr. Walsh, which narrowly missed him. Mr. Walsh yelled after the gunman, who had at this point joined up with an accomplice. The two men jumped into a red car being driven by Petitioner, and the three men sped away.

During the robbery and the shooting, Patrick Hamblin, an off-duty Cheatham County Deputy, was across the street from the hotel. Hearing the shots and witnessing the struggle between Mr. Walsh and the gunman, Deputy Hamblin rushed to the hotel parking lot in his pickup truck to offer assistance. He reached the lot at the same time the three men in the car attempted to flee the scene. He positioned his truck to block the three men's exit, announcing his presence as law enforcement and ordering the three men out of the car. Petitioner disregarded Deputy Hamblin's order, pulled around his truck blocking the exit, and sped away.

Deputy Hamblin gave chase and followed the car as it sped down McGavock Pike. The chase lasted for several miles and reached speeds between 85 and 100 miles per hour. Deputy Hamblin testified that Petitioner ignored traffic lights, stop signs, and drove on the wrong side of the road. At one point, the accomplice riding in the backseat hung out the window and fired a shot at Deputy Hamblin's truck. Eventually, Deputy Hamblin got close enough to the car and struck it with his truck, causing it to crash into a porch railing. The three men then jumped out of the car. Instead of fleeing on foot, Petitioner charged towards the truck while Hamblin was still seated behind the wheel. Unable to see Petitioner's hands, Deputy Hamblin shot him in the chest as he reached the

truck's driver-side window. Petitioner then turned and fled. Police arrived soon after, and Petitioner was found a few blocks away and arrested. Petitioner was subsequently incarcerated in the custody of the Tennessee Department of Correction.

Petitioner's hearing in front of the Board of Parole ("the Board") was held on July 21, 2016. Mr. Walsh traveled from Pennsylvania to Nashville, Tennessee to voice his opposition to granting Petitioner parole. At the hearing, Mr. Walsh described his injuries, testifying that they had prevented him from being able to work for over a year after the incident. He also testified to the effect the incident had on his marriage. According to Mr. Walsh, his wife began drinking heavily after the incident, which led to the gradual deterioration of their marriage.[1] Nicholas Bailey, one of the prosecutors in the case, also voiced his opposition to granting Petitioner parole. He told the Board: "[T]he reason that I'm here 18 years after I left the DA's office is because if there was ever anybody I felt the public needed to be protected from, it is [Petitioner]."

Other evidence submitted to the Board demonstrated that Petitioner has a long history of criminal activity and recidivism. At Petitioner's trial for the crimes underlying this appeal, the trial court remarked that Petitioner had been in and out of court "like a revolving door." Also at that trial, Petitioner admitted that there had been only one calendar year since he turned eighteen in which he was not arrested or sent to jail. Specifically, Petitioner received two stolen property possession convictions and two simple robbery convictions in 1987 and a third-degree burglary conviction in 1988. Petitioner served time for these offenses and was paroled in 1989; however, he violated his parole when, in 1990, he received another robbery conviction. He served time and was paroled for this offense, but, in 1993, he again violated his parole due to his (1) unlawful possession of a weapon, (2) failure to report an arrest, (3) failure to work at lawful employment; (4) two driver's license violations, and (5) criminal impersonation.

Petitioner has also had numerous disciplinary problems in prison while serving out his current sentence. Since he has been incarcerated, Petitioner has received 49 disciplinary write-ups. Of those 49, the more egregious include eight positive drug screens, two attempts to alter a drug screen, two instances of possession of drug paraphernalia, one instance of possession of marijuana, three infractions for fighting—a fourth for assaulting a staff member while trying to flush marijuana down the toilet—one instance of possession of a pop lighter, two instances of possession of homemade knives, and one instance of possession of a cell phone.

After the parole hearing, and after the Board's review of all of the evidence referenced above, all four members of the Board voted against granting Petitioner parole. The reasons cited for such denial included: the seriousness of the offense; the substantial

---

[1] According to Mr. Walsh, due to his wife's alcohol consumption, "[s]he stopped being a mom to my kids."

risk that Petitioner would not conform to the conditions of his release; the adverse effect his release would have on institutional discipline; and his need to complete therapeutic community. Petitioner appealed the Board's decision in the Chancery Court of Davidson County via a petition for common law writ of certiorari. On December 21, 2017, the trial court dismissed the petition for writ of certiorari, finding that Petitioner had failed to present any facts that would support a claim that the Board had acted illegally, fraudulently, arbitrarily, or in excess of their jurisdiction. Petitioner now appeals that decision.[2]

## ISSUE PRESENTED

Petitioner raises only one issue on appeal: Whether the trial court erred in affirming the Tennessee Board of Parole's decision to deny Petitioner parole due to the seriousness of his offense, the substantial risk to reoffend, the need to complete therapeutic community, and the substantial adverse effect on institutional discipline.

## STANDARD OF REVIEW

Inmates may use the common law writ of certiorari to seek review of decisions made by prison disciplinary boards, parole eligibility review boards, and other similar tribunals. *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). The common law writ of certiorari has been used to remedy "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." *Id.*

---

[2] The record indicates that Petitioner filed his notice of appeal with the trial court instead of the appellate court and that the trial court did not receive the notice until January 23, 2018—31 days after entry of the trial court's final order. Despite the apparent tardiness of Petitioner's filing, Tennessee Rules of Appellate Procedure 4(b) and 20(g) work together to preserve Petitioner's appeal.

Rule 20(g) provides that if a *pro se* litigant, incarcerated in a correctional facility, prepared the papers for filing, but such filing was not received by the clerk of court until after the time fixed for filing, then the filing shall be timely if the papers were delivered to the appropriate person at the correctional facility within the time fixed for filing. *See* Tenn. R. App. P. 20(g). Rule 4(b) provides that if a notice of appeal—filed between July 1, 2017 and June 29, 2018—was received by the trial court clerk within the original 30 days after entry of the judgment, the filing party shall have an additional 20 days to file the notice with the appellate court clerk. *See* Tenn. R. App. P. 4(b).

Here, Petitioner, a *pro se* litigant, prepared his papers and mailed the notice of appeal to the trial court on January 11, 2018—21 days after the entry of the final order on December 21, 2017. Though he filed the notice with the trial court clerk, Rule 20(g) deems such filing as timely. Because the notice was timely filed within the original 30 days, Petitioner had an additional 20 days from January 22, 2018 to correct the mistake and to file the notice with the appellate court clerk. Petitioner did so on February 1, 2018, and, as recognized by this Court in a February 8, 2018 order, Petitioner's notice of appeal was ultimately deemed timely.

The decision of whether to grant or deny parole to an inmate is vested with the Board, not the courts. *See Hopkins v. Tenn. Bd. of Parole & Prob.*, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001). Therefore, judicial review of a Board's decision concerning parole is limited. *Id.* As our Supreme Court has noted:

> Judicial review of a parole decision made by the Board is narrow; it is limited to consideration of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Tenn. Code Ann. § 27-8-101; *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). The reviewing court does not inquire into the intrinsic correctness of the Board's decision, reweigh the evidence, or substitute its judgment for that of the Board. *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008); *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001). The court considers only the manner in which the decision was made. *Stewart*, 368 S.W.3d at 463 (citing *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994)).

*Brennan v. Tenn. Bd. of Parole*, 512 S.W.3d 871, 873 (Tenn. 2017). Consequently, "the courts will not use the common-law writ to grant relief when the Board's decision was arrived at in a constitutional and lawful manner." *Hopkins*, 60 S.W.3d at 82 (citing Tenn. Code Ann. § 40-28-115(c); *Arnold*, 956 S.W.2d at 480; *Powell*, 879 S.W.2d at 873). The Court of Appeals "review[s] the Board's decision for rationality, and the Board's decision will be upheld unless the Board lacks a rational basis for its decision." *Greenwood v. Tenn. Bd. of Parole*, 547 S.W.3d 207, 220 (Tenn. Ct. App. 2017).

Furthermore, we recognize that Appellant is a *pro se* litigant and respect his decision to proceed self-represented. However, with regard to self-represented litigants, this Court has explained:

> *Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden. Conducting a trial with a *pro se* litigant who is unschooled in the intricacies of evidence and trial practice can be difficult. Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training.

*Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) (internal citations omitted). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse *pro se* litigants from complying with the same substantive and procedural rules that represented parties are expected to

observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). This Court must "be mindful of the boundary between fairness to a *pro se* litigant's adversary." *Id.* Furthermore, "[p]*ro se* litigants are not . . . entitled to shift the burden of litigating their case to the courts." *Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009).

## DISCUSSION

Petitioner argues that the Board acted fraudulently, arbitrarily, and illegally by denying his parole and basing its decision on falsehoods and immaterial evidence with no reliability. After our review of the record, however, we are of the opinion that the Board's decision to deny Petitioner parole was lawful and was supported by ample material evidence.

Pursuant to state rules and regulations, the Board may consider several, various factors when making parole determinations. *See* Tenn. Comp. R. & Regs. 1100-01-01-.07(1). The Rules of the Tennessee Board of Parole and Tennessee Code Annotated section 40-35-503(b) further provide that, after applying the various factors for consideration, the Board shall deny the inmates release on parole if it determines that:

> (a) There is a substantial indication that the inmate will not conform to the conditions of his or her parole;
> (b) Release from custody at this time would depreciate the seriousness of the crime of which the person stands convicted or promote disrespect for the law;
> (c) Release at this time would have a substantially adverse effect on institutional discipline; or
> (d) The person's continued correctional treatment, medical care, or vocational or other training in the institution, will substantially enhance the person's capacity to lead a law-abiding life when given release at a later time.

Tenn. Comp. R. & Regs. 1100-01-01-.07(4); *see also* Tenn. Code Ann. 40-35-503(b). Here, the Board cited four reasons for denying Petitioner's parole, three of which we discuss below.

First, pursuant to the Rules of the Tennessee Board of Parole[3] and Tennessee Code Annotated section 40-35-503(b)(2), the Board denied Petitioner parole because it determined that releasing Petitioner from custody would depreciate the seriousness of the crime or promote disrespect of the law. Regarding this factor, this Court has stated that "the seriousness of the crime constitutes material evidence upon which the Board may rely to deny parole. *Greenwood*, 547 S.W.3d at 216. The record, here, shows that

---

[3] Tenn. Comp. R. & Regs. 1100-01-01-.07(4)(b).

- 6 -

Petitioner was an active participant in a senseless crime where a father was gunned down in front of his wife and children. After the shooting, Petitioner drove the getaway car, reaching speeds between 85 and 100 miles per hour in the ensuing chase by Deputy Hamblin. During the chase, Petitioner ignored traffic lights and stop signs and drove on the wrong side of the road. One of Petitioner's accomplices even fired several shots out the car window at Deputy Hamblin during the high speed chase. These were serious crimes and demonstrated a total lack of regard for human life. As such, there was material evidence for the Board to determine that the seriousness of the offense was a valid reason to deny Petitioner parole.

Next, pursuant to the Rules of the Tennessee Board of Parole[4] and Tennessee Code Annotated section 40-35-503(b)(1), the Board denied Petitioner's parole because it determined that there was a substantial risk he would not conform to the conditions of his release. The record indicates that Petitioner has a long history of criminal convictions and a pattern of recidivism. Moreover, Petitioner has also had numerous disciplinary problems in prison—49 disciplinary write-ups since he has been incarcerated—while serving out his current sentence. Petitioner's behavior in and out of prison indicates that he would likely not conform to the conditions of release. Accordingly, the Board was well within its authority to deny Petitioner's parole on this ground.

Next, pursuant to the Rules of the Tennessee Board of Parole[5] and Tennessee Code Annotated section 40-35-503(b)(3), the Board denied Petitioner's parole because it determined that his release would have a substantially adverse effect on institutional discipline. As previously discussed, Petitioner has received 49 disciplinary write-ups since he has been incarcerated. Moreover, several of these write-ups were for more serious, rather than minor, offenses, including positive drug screens, fighting, assaulting prison staff, and possession of homemade knives. The record supports the Board's denial of Petitioner's parole on this ground, as well.

Petitioner also argues that the Board violated his due process rights because false claims were made that he had violated parole more than once. Specifically, Petitioner argues that the Board "used a parole violation" for which Petitioner had never received a revocation hearing. Petitioner's argument is unfounded. The record indicates that Petitioner first violated parole in August 1990. Before he was given a revocation hearing, however, Petitioner was convicted of robbery on November 16, 1990, one week before his original sentence was to expire. Because he was to begin serving a new sentence, a revocation hearing was unnecessary. The second time Petitioner violated parole, he was given a revocation hearing, and his parole was revoked on July 1, 1993. However, it is immaterial as to how many times Petitioner's parole was revoked or how many times Petitioner was given a revocation hearing because it is undisputed that Petitioner violated

---

[4] Tenn. Comp. R. & Regs. 1100-01-01-.07(4)(a).
[5] Tenn. Comp. R. & Regs. 1100-01-01-.07(4)(c).

parole twice.  Moreover, Petitioner does not deny this fact.[6]  As such, the Board did not violate Petitioner's due process rights.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court affirming the decision of the Tennessee Board of Parole to deny Petitioner parole.

_____

ARNOLD B. GOLDIN, JUDGE

---

[6] The following exchange took place during the hearing before the Board:

[The Board]: It looks like you've been on parole twice before but violated both times.  You're not on parole on the current offense, but on this previous – previous felonies that we were talking about, you were paroled at some point; is that right?

[Petitioner]: Yes, sir.

[The Board]: It looks like you were paroled in 1989 and then in 1991.  In the 1989 parole, you violated on the new robbery and were revoked in 1990 on that.  And then I guess you were paroled again in '91 and then you violated parole due to the unlawful possession of a weapon; and failure to report an arrest; failure to work at lawful employment; driver's license violations, times two – and I guess that's your misdemeanor conviction – and criminal impersonation.  Those misdemeanor convictions – several of them were obtained while you were on parole the second time; is that correct?

[Petitioner]: Yes, that's correct.