JUNE OKO, Plaintiff-Appellant, *v.* JAMES ROGERS, M.D., Defendant-Appellee.

Third District   No. 3—83—0479

Opinion filed July 18, 1984.

BARRY, J., dissenting.

Louis S. Goldstein & Associates, of Chicago (David A. Novoselsky, of counsel), for appellant.

James D. Rogers, of Joliet, for appellee, *pro se.*

JUSTICE HEIPLE delivered the opinion of the court:
This appeal arises out of a medical malpractice action brought by the plaintiff, June Oko, against the defendant, Dr. James Rogers, who appeared *pro se.* The complaint alleged that the defendant was negligent in performing hemorrhoid surgery on the plaintiff. A jury verdict was returned in favor of the defendant.

The issues on appeal concern whether the plaintiff was denied her right to a fair trial due to the conduct of the defendant acting as his own counsel. An issue is also raised as to the jury instructions. Relevant facts will be presented as needed.

The plaintiff first argues that the trial court erred in not granting a mistrial due to an improper comment made by the defendant in his opening statement. The defendant told the jury that the plaintiff had asked him to write a letter saying that her hemorrhoids had been caused by a work-related accident so she could collect insurance money. The defendant's theory was that the plaintiff left his care because he refused to write the letter. Therefore, the defendant was not liable for the plaintiff's post-operative complications since she refused to remain in his care and follow his instructions.

The plaintiff moved for a mistrial characterizing the defendant's comment as an unfounded charge of fraud. The court held that the plaintiff's motion was premature and advised the plaintiff to renew the motion if the defendant failed to "tie-up" his allegations. The defendant presented no supporting evidence and the plaintiff did not renew her motion at the close of the defendant's case.

When a trial court reserves a ruling, the movant must seek a decision in order to preserve the motion for review. (*Terracina v. Castelli* (1979), 80 Ill. App. 3d 475.) The plaintiff was instructed to renew her motion for a mistrial if the defendant failed to substantiate his charges. It is true that the plaintiff moved for a mistrial a second time, but this motion was in response to comments made by the defendant when he cross-examined one of plaintiff's expert witnesses. To the extent that this motion sought to renew the prior motion for a mistrial, it was untimely because the defendant had not presented any evidence.

Had the motion been renewed at the proper time during trial, the court might have been able to cure any error via cautionary instructions. By failing to renew the motion, the plaintiff deprived the court of this opportunity. The fact that the issue was raised in the plaintiff's post-trial motion does not cure this defect. It was the plaintiff's obli-

gation to settle the issue at trial. It is too late to do so once judgment has been entered. Therefore, the issue is waived.

■ Next, the plaintiff argues that the court erred in giving the jury two different instructions on the duty of care owed by a physician. The plaintiff tendered Illinois Pattern Jury Instruction (IPI), Civil, No. 105.02 (2d ed. 1971), which defined the duty owed by a physician holding himself out as a specialist. The defendant admitted that he held himself out as a specialist in rectal surgery. The court also gave defendant's IPI Civil No. 105.01, over the plaintiff's objection, which defined the duty owed by a general practitioner. The defendant agreed that No. 105.01 should not be given since he was a specialist, but the court saw no conflict between the instructions and gave both. The plaintiff contends that a specialist should be held to a higher standard of care. Therefore, plaintiff argues that it was error for the court to permit the jury to base its verdict on the standard of care owed by a general practitioner.

The comment to IPI Civil No. 105.02 indicates that as a general rule, a specialist is held to a higher degree of skill, care and learning than the average practitioner. Thus, in most jurisdictions, it is error to give an instruction which applies to a specialist the degree of skill and care required of a general practitioner. (61 Am. Jur. 2d *Physicians, Surgeons* sec. 363 (1981).) Illinois is an exception.

In *Schireson v. Walsh* (1933), 354 Ill. 40, 57, the Illinois Supreme Court rejected the idea that one who held himself out as the world's greatest surgeon had to possess a higher degree of skill than is expected of the average physician:

"The law of this State is that a physician and surgeon is required to possess, and in his practice to use, reasonable skill—not, perhaps, the highest degree of skill that one learned in the profession may acquire, but reasonable skill such as physicians in good practice ordinarily use and would bring to a similar case in that locality. *** [We] are not disposed to depart from that rule or to enlarge the professional requirements of a physician or surgeon in the practice of his profession ***."

This is still the law in Illinois (*Stogsdill v. Manor Convalescent Home, Inc.* (1976), 35 Ill. App. 3d 634), and we are in no position to depart from supreme court precedent and adopt the rule followed in other jurisdictions. Therefore, no error occurs when a court applies to a specialist the standard of care required of a general practitioner.

■ The plaintiff's final arguments relate to the defendant's *pro se* status. The plaintiff contends that she was denied a fair trial because: (1) the trial court attempted to assist the defendant in present-

ing his case; (2) the defendant was argumentative and used leading questions when he examined witnesses, and; (3) the defendant made an improper closing argument.

The trial in this cause spanned over five days and produced a record which is 661 pages long. After a thorough and detailed review of this record, we are unable to conclude that the plaintiff was denied a fair trial. Although the defendant on numerous occasions departed from the rules of trial court practice, his excursions were usually cut short by objections which were sustained and repeated until the defendant conformed to proper procedures. The defendant was not permitted to do as he pleased.

Furthermore, the trial court took steps to make sure that the defendant's unorthodox questions did not confuse the jury. Whenever necessary, the trial judge would make his own brief and limited examination of a witness in order to clarify the testimony. The court also guided the defendant through parts of his own testimony in order to avoid a long narrative on irrelevant matters.

■ Considerable latitude must be allowed a judge in conducting a trial. The conduct and remarks of the judge are grounds for reversal only if they are such as would ordinarily create prejudice in the minds of the jury. (*Clamage v. Shapiro* (1977), 48 Ill. App. 3d 90.) We find that the judge remained within his proper provinces in the present case. The judge gave due consideration to the defendant's *pro se* status but was never reluctant to sustain the plaintiff's objections when necessary. Although the judge would carefully explain to the defendant why certain objections were being sustained, there is no evidence that he conducted the defendant's case for him or failed to remain impartial.

As any judge or lawyer knows, the conduct of a jury trial with a *pro se* litigant who is unschooled in the intricacies of evidence and trial practice is a difficult and arduous task. The heavy responsibility of ensuring a fair trial in such a situation rests directly on the trial judge. The buck stops there. There is no law that requires a litigant to have a lawyer. The lawyer for the opposing side cannot be expected to advise the opposing party who is *pro se*. The judge cannot presume to represent the *pro se* party. In order that the trial proceed with fairness, however, the judge finds that he must explain matters that would normally not require explanation and must point out rules and procedures that would normally not require pointing out. Such an undertaking requires patience, skill and understanding on the part of the trial judge with an overriding view of a fair trial for both sides. We believe that Judge Cerri adequately faced up to that high respon-

sibility in this case.

■ The plaintiff is entitled to a fair trial, not one that is error free. If it appears that an error has not affected the outcome below or if it can be seen from the entire record that no injury was done, the judgment is not to be disturbed. (*Tripp v. Bureau Service Co.* (1978), 62 Ill. App. 3d 998.) The plaintiff has failed to demonstrate how the outcome below would have been different if the defendant had retained an attorney. Taking into account the conduct of both the court and the defendant, it is not apparent from the record that the plaintiff was denied her right to a fair trial. Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

SCOTT, J., concurs.

JUSTICE BARRY, dissenting:

I do not agree that plaintiff received a fair trial in this cause, and I would grant her a new trial; therefore, I must dissent from the opinion of the majority.

One blatant error occurred when the jury was given two instructions stating two different standards of care to be applied in this case. IPI Civil No. 105.01 was given, defining the duty owed by a general practitioner, and IPI Civil No. 105.02 was also given, setting forth the higher standard expected of a specialist. Even though it is not error to apply to a specialist the standard of care required of a general practitioner, the problem here is that the jury was given both instructions. Confusion as to the proper standard of care would be inevitable. An error in defining the standard of care should be reversible error. *Cf. Seibert v. Grana* (1968), 102 Ill. App. 2d 283, 243 N.E.2d 538.

In addition I believe that the most critical issue in this appeal is whether plaintiff received a fair trial in view of the understandable efforts of the trial judge to assist defendant in the presentation of his defense. As this court stated, in *Bohannon v. Schertz* (1974), 21 Ill. App. 3d 149, 150, 315 N.E.2d 316, 317:

"The law is well settled in Illinois that a defendant has the right to represent himself and to conduct his care without the aid of an attorney; however, if this is his desire he must comply with the same rules of proceedings as would be required of an attorney."

(Accord, *Biggs v. Spader* (1951), 411 Ill. 42, 46, 103 N.E.2d 104, 107.) It is clear from the record, in the instant case the trial court several

times took over the questioning of witnesses on behalf of defendant in order to facilitate the presentation of a coherent defense in response to the testimony of the plaintiff and the doctors who testified in her behalf. Several examples from the report of proceedings will illustrate my concern.

In presenting her case, plaintiff first called defendant as an adverse witness. At the conclusion of her examination of defendant, the trial court explained to defendant the tactical alternatives available to him—*i.e.*, that he could wait and testify as a part of his own case or he could give direct testimony at the conclusion of plaintiff's examination of him. Defendant indicated that he wanted to testify right then, and the trial judge proceeded to question defendant at length about his post-operative treatment of plaintiff and about her progress under that treatment. Thus the court conducted the direct examination of defendant. Later, while defendant was attempting to cross-examine plaintiff's expert medical witness, defendant started to read from an article that had not been introduced into evidence. After sustaining plaintiff's objection to defendant's questions, the court told defendant, "Ask him if he read it and is familiar with the article, Doctor, the operation procedure." During subsequent cross-examination of the same witness, defendant attempted several times to ask the witness whether his responsibility to his patient did not end when she terminated her relationship with him. After several versions of the question were objected to by plaintiff and the objections sustained by the court, defendant asked, "Is there any way I can accomplish that?" and the court advised defendant, "Ask him what is customary." Following plaintiff's redirect examination of the witness, defendant had no recross, but the trial court asked several questions to clarify certain details of surgical procedure which had been mentioned by the witness on redirect. In effect, the court conducted the re-cross-examination for defendant.

During another occasion, while defendant was questioning his own expert witness, Dr. McSweeney, the court overruled an objection by plaintiff to the form of a question asked by defendant relating to the surgical procedures the witness would use, and then the court provided defendant with the correct form by adding, "Based on the standards of our local community." At the close of Dr. McSweeney's testimony, plaintiff moved that the testimony be stricken as not relevant to the issue of the prevailing standard of care for a reasonably well-qualified surgeon. The court stated:

> "Well, normally if I had a lawyer sitting there, I would—you might be technically correct. You might be correct. With Dr.

Rogers, who at least in his artful questioning, I think the concept is sufficiently established in the record to allow that testimony to stand."

It is apparent to me that the trial court did not hold defendant to the same rules of procedure as he would have an attorney in determining the relevancy and admissibility of this evidence. To condone such actions of the trial court here is to invite *pro se* representation in difficult trials which would make a mockery of the judicial process, even though to fully inform a jury is a commendable purpose. Defendant was entitled to a fair opportunity to present his evidence, but nothing more. If he was insufficiently versed in legal procedure to place his evidence before the jury pursuant to the ordinary rules of procedure, then he was not entitled to have the court assist him by phrasing questions, by conducting the examination of witnesses, or by special rulings in his favor.

Without unnecessarily lengthening this opinion, with additional examples, it is my firm belief the trial court overstepped the bounds of judicial discretion in assisting defendant with the trial of this cause, and, accordingly, that plaintiff is entitled to have the judgment reversed and a new trial granted.