*In re* MARRIAGE OF LUCJAN MALINOWSKI, Petitioner-Appellee, and MARIA MALINOWSKI, Respondent-Appellant and Third-Party Plaintiff (Irena Hurman, Third-Party Defendant-Appellee).

First District (6th Division)   No. 1—90—0191

Opinion filed March 15, 1991.

538

Adam A. Dabek, of Chicago, for appellant.

Kalcheim, Schatz & Berger, of Chicago (Michael S. Cohen and Norah M. Plante, of counsel), for appellee.·

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Lucjan Malinowski, filed a petition for dissolution of marriage on November 6, 1987. Respondent, Maria Malinowski, filed an answer and a third-party complaint against Irena Hurman and Beata Owczarz, requesting the court to adjudicate respondent's marital and homestead rights in the former marital home, which Hurman purchased from petitioner. (The action against Owczarz, petitioner's daughter, apparently has been dismissed, and she is not involved in this appeal.) The matter proceeded to trial on September 6, 1989, and was continued to December 13, 1989. Respondent appeared *pro se* all through the trial. At the conclusion of the proceedings, the trial court granted a judgment of dissolution, made a distribution of marital property, and awarded respondent limited maintenance. The court also ordered respondent to vacate the home owned by Hurman, but denied Hurman's request for rent. On appeal respondent contends that the trial court erred in entering judgment without giving her an opportunity to present evidence in defense or on her third-party complaint; that the court erred in its distribution of the property and its limited maintenance; and erred in allowing certain bank books into evidence.

On appeal respondent is now represented by counsel and at oral argument counsel informed this court that respondent is not contesting the dissolution of the marriage. Consequently, we concern ourselves only with the property and maintenance issues.

The parties were married on March 8, 1976, in Chicago, and separated on March 15, 1987. No children were born of the marriage. Petitioner filed the petition for dissolution on November 6, 1987. At that time, petitioner was 45 years old and respondent was 65 years old.

Because respondent initially contends that the trial court did not permit her to present her case, we shall set out the chronology and events of the case in some detail. The trial of this matter was most difficult, and that difficulty was caused by the conduct of respondent and her friend, Mrs. Rudek. Although there was a court-appointed in-

terpreter, Rudek constantly interjected herself as a spokesperson for respondent. Additionally, respondent rarely answered questions put to her, but rather persisted in carrying on a diatribe against petitioner. Indeed, the trial court displayed extraordinary patience towards respondent, not only during the trial, but in the many months prior to trial.

From December 1987 until before trial, three different attorneys filed appearances on behalf of respondent at various times, but all withdrew. When the trial judge finally ordered the trial to proceed in September 1989, it was only after he and the presiding judge of the division had unsuccessfully tried to obtain legal representation for respondent. The trial judge expressed reluctance to proceed to trial with respondent unrepresented, but correctly stated that he had no other recourse.

At trial, petitioner called respondent as an adverse witness. Before the questioning began, the court explained to respondent that she had the right to object to improper questions and that the court would rule on any objections. Respondent testified that she and petitioner moved into the residence at 1327 N. Hamlin in April 1987. She had not paid any money towards rent, mortgage, taxes or insurance since 1987.

Respondent testified that in 1985 and 1986 she opened two accounts at Security Federal Savings and Loan and that she was the only person who withdrew any money from these accounts. She identified a certificate of deposit which she opened with a $2,500 deposit. She closed the account representing that certificate of deposit on October 2, 1986, and took possession of the money. On April 7, 1987, she closed the other account at Security Federal. She sent the funds from these accounts, a total of $32,000, to Poland.

She testified that "just a little bit was my money" and that the rest belonged to her children. She stated that when her son left the United States, he asked her to take possession of the money. While he lived in the United States, her son worked in a factory and earned "good money." She worked double shifts.

Respondent testified that she receives $150 per month for social security, $67 per month for disability, and a $40 monthly pension from Germany. She has no other income and is in poor health. She last worked in June 1987. During that month, petitioner told her that he wanted a divorce. She entered the hospital for a "nervous condition" in June 1987 and remained hospitalized for three weeks.

Petitioner's attorney informed the court that respondent identified the Security Federal documents at her deposition, which tran-

script he did not order. He offered to subpoena a bank officer in order to lay a proper foundation. The court, however, admitted the records subject to cross-examination. The court asked respondent whether she claimed that petitioner took any funds from the accounts. Respondent replied that he took the bank books, but not the money because she had withdrawn the money. When asked whether she wanted to say anything else about the money, respondent stated that petitioner had ruined her health, that she worked for 13 years, then found herself on the street without a place to sleep.

Petitioner testified that he is 48 years old and has lived in the United States for 19 years. He worked for eight of his 13 years of marriage to respondent. He currently works about 25 hours per week as a cook, earning $9.29 an hour. His net pay is $160 to $175 per week. He stated that respondent's son lived in the United States for seven months and worked only for three of those months. Petitioner does not know how much the son earned.

Petitioner testified that he purchased the property at 1327 N. Hamlin in November 1986 for $17,000. He borrowed that amount from his sister. Although respondent refused to give him any money for the purchase, the parties moved into the residence. He sold the property in April 1987 to Hurman for $20,000. Petitioner described himself as a widower in the deed and forged the name of his daughter. (The trial court was informed that Hurman had received clear title issued by Chicago Title & Trust Company.) Petitioner repaid his sister the $17,000 that he had borrowed and spent the rest of the money on court expenses.

The court then asked respondent whether she had any questions for petitioner at this stage. She responded: "These are all lies." She asked how petitioner's sister earned so much money. Petitioner responded that she was paid well in the cleaning business and came to the United States three times. Once she stayed for two years and two months and twice stayed for more than a year. Instead of asking petitioner other questions, respondent made comments, which were stricken by the court.

The direct examination of petitioner continued. He stated that he took title in his name alone because he bought the property with his own money for investment purposes. He painted the home, installed a new stove and heating system, and worked on the roof and garage. He sold the home soon after he bought it. Petitioner told respondent that he intended to sell the home, and she agreed to the sale. He received $17,971.65 in cash from the closing. The court admitted petitioner's financial affidavit subject to cross-examination.

In her cross-examination of petitioner, respondent asked, "Why are you lying?" "I want to state that these are all lies." Petitioner's objection was sustained. She then asked, "Why is he lying all the time in front of me and everybody?" Again, the court sustained the objection and tried to direct respondent to ask questions on the sale of the home. When she made another statement to which the court sustained an objection, the court ended the cross-examination and scheduled the next trial date.

The trial resumed on December 13, 1989. Attorneys for petitioner and Hurman each summarized their evidence for the court. Respondent and Rudek interjected various comments throughout these proceedings, stating that: respondent is sick, cannot work and had no money for an attorney; the money in the accounts belonged to her children; and petitioner hid money in his girlfriend's account. Counsel for petitioner reminded the court that respondent had not presented her case. The court, however, ordered dissolution. It awarded respondent the $32,000 cash that she had sent to Poland, finding it to be marital funds; granted respondent nonmodifiable, limited maintenance of $50 per month for 18 months; and awarded Hurman possession of the home, ordering respondent to vacate the home within 45 days.

We initially consider respondent's claims that the trial court abused its discretion by entering judgment based solely upon petitioner's case and not allowing her to present her case in chief. Better practice would have the judge inform respondent, after petitioner rested, that she was entitled to present a defense. However, it is obvious that the direction would have gone unheeded and that respondent would have merely continued her verbal attack on petitioner. We believe that the trial judge allowed respondent ample opportunity to offer relevant evidence and testimony. We find that despite the difficult nature of the trial, the judge was made aware of all the evidence regarding all the property and income of both parties. (Dissolution of the marriage is no longer an issue.)

■■ ■ A trial judge is accorded considerable latitude in conducting a trial. (*Oko v. Rogers* (1984), 125 Ill. App. 3d 720, 466 N.E.2d 658.) Conducting a trial with a *pro se* litigant who is unfamiliar with the complexities of evidence and trial practice is a difficult task. Although the responsibility of ensuring a fair trial falls squarely on the trial judge (*Oko v. Rogers*, 125 Ill. App. 3d 720, 466 N.E.2d 658), the judge cannot presume to represent a *pro se* litigant; nor is opposing counsel required to advise a *pro se* party. The trial judge here accorded respondent substantial leeway in presenting evidence and in

responding to petitioner's contentions, even suspending petitioner's direct examination to allow her to respond. Despite respondent's repeated digressions into irrelevant, emotional issues, the trial judge struck a balance between allowing respondent to present her case *pro se* and protecting procedural and evidentiary safeguards and petitioner's rights. We believe that the trial court adequately and conscientiously met the heavy burden of providing a fair, if not perfect, trial. *Reidelberger v. Highland Body Shop, Inc.* (1979), 79 Ill. App. 3d 1138, 399 N.E.2d 247.

■ Nor did the trial court err by insisting that the trial proceed as finally scheduled and refusing to continue the case again to allow respondent to obtain an attorney. As we have noted, the court granted respondent numerous continuances to switch or obtain counsel, postponed the scheduled trial date twice, and gave respondent a list of reduced fee and no fee legal aid clinics. We note also that the trial was in recess from September to December 1989, and at the later date respondent still had not engaged counsel. The court properly proceeded as scheduled with respondent acting *pro se.*

■ Respondent also contends that she was denied a fair trial because the deputy sheriff assigned to the courtroom cut off her answers to the questions of petitioner's counsel. She thus maintains that the sheriff created "an intimidating environment" for respondent and that "his remarks and interruptions added to the confusion in the courtroom." We do not agree.

The sheriff, who spoke Polish, attempted, although unsuccessfully, to persuade respondent to answer questions put to her, and to refrain from making any emotional outbursts. The review of the record indicates that the sheriff's conduct did not intimidate respondent or deprive her of a fair trial in any way.

We next consider respondent's argument that the trial court abused its discretion in entering the limited maintenance award. The trial court may award limited maintenance and such decision will not be reversed on appeal unless it is an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Hart* (1989), 181 Ill. App. 3d 1066, 537 N.E.2d 829.) Respondent contends that the trial court's maintenance award failed to consider the statutory factors, specifically the parties' health and economic circumstances.

■ Section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 504(b)) requires the court to consider the following factors in determining the amount of maintenance: the financial resources of the party seeking maintenance, including marital property apportioned to her and her ability to meet

her needs independently; time necessary to acquire sufficient education to enable her to work; standard of living established during the marriage; duration of marriage; parties' ages and physical and emotional conditions; and ability of spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. (*In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 543 N.E.2d 119.) In addition, a court may deny maintenance when assets awarded to the party generate sufficient income to meet her needs. *In re Marriage of Harding* (1989), 189 Ill. App. 3d 663, 545 N.E.2d 459.

■ Our review of the record indicates that the trial judge heard testimony from respondent as to her monthly income, consisting of social security, disability and pension income totalling approximately $257 per month. Respondent also testified that she withdrew $32,000 and sent it to Poland, describing the money as hers and her son's. In a rather roundabout fashion, the court learned about respondent's health: she was hospitalized in June 1987 for a nervous condition; she had a heart condition which required a pacemaker; and she last worked in June 1987. Presumably, the court considered this information in setting her maintenance award. We, therefore, reject respondent's contention that the court failed to consider the parties' health and economic circumstances. Further, the record contains sufficient references to the other applicable statutory factors. Especially applicable are the amount of petitioner's income, his limited capacity to meet both his and respondent's financial needs, and respondent's $32,000 cash withdrawal. Although respondent's health is poor and she has not worked since 1987, she did not demonstrate that she lacked sufficient assets to provide for her reasonable needs. In fact, given her award of $32,000, the evidence suggests that she had sufficient assets to meet her needs, even if a portion of the cash did belong to her son. The court could also consider that respondent had lived rent free in the Hamlin Street property for many months after its sale and the parties' separation. We find that the trial court had sufficient facts to show the parties' needs and resources and to determine that a limited maintenance award would be reasonable. Accordingly, we conclude that the court did not abuse its discretion in the award of limited maintenance.

Respondent also argues that the trial court abused its discretion in its property division. We will not disturb a trial court's property division unless we conclude that no reasonable person would take the view adopted by the trial court (*In re Marriage of Wolf* (1989), 180 Ill. App. 3d 998, 536 N.E.2d 792) or the division results in substantial in-

justice (*In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 466 N.E.2d 925).

◼ In the present case, the court learned that petitioner purchased the Hamlin Street property with money he borrowed from his sister, intentionally omitted respondent's name on the title and sold the property in an arm's length sale at a minimal profit. Although the trial court found it to be nonmarital property, even assuming that it was marital property, petitioner's profit from the sale was less than $3,000 regardless of any homestead rights. Given that respondent was awarded the $32,000, we cannot conclude that it was unreasonable for petitioner to retain the minimal profit from the sale. Nor can we determine that the property division resulted in substantial injustice to respondent. Although the actions of petitioner, in describing himself as a widower and forging his daughter's signature on the deed, were improper, it appears that it was not respondent, but Hurman who may have been prejudiced. Fortunately, Hurman received a good insured title.

◼ Finally, we reject respondent's contention that the trial court abused its discretion in admitting the bank books into evidence, since a proper foundation had not been laid. Respondent testified regarding these documents and although she and petitioner apparently disagreed about the ownership of these moneys, she identified the bank books as her accounts. She also stated that she had withdrawn the money from these accounts. The introduction of the bank books was not significant, and certainly caused no prejudice to respondent.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and EGAN, J., concur.