FILED
12/02/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2022

## BRANDON COPELAND v.
## TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Chancery Court for Davidson County**
**No. 21-0194-III          Ellen Hobbs Lyle, Chancellor**

_____

### No. M2021-01557-COA-R3-CV

_____

The appellant, a former Tennessee Department of Correction ("TDOC") employee, challenges the Tennessee Board of Appeals' decision upholding his dismissal as an employee due to actions allegedly constituting official misconduct and tampering with evidence. The appellant requests that this Court overrule or modify the Tennessee Supreme Court's holding in *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506 (Tenn. 2017), which this Court lacks authority to do. Although we conclude that the appellant has waived his remaining two issues on appeal by failing to provide legal authority or argument, we further conclude that the Tennessee Board of Appeals' decision was supported by substantial and material evidence. We therefore affirm the Davidson County Chancery Court's final judgment dismissing the appellant's petition for judicial review with prejudice.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and JEFFREY USMAN, JJ., joined.

Brandon Copeland, Crossville, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Eugenie B. Whitesell, Senior Assistant Attorney General, for the appellee, Tennessee Department of Correction.

# OPINION

## I. Factual and Procedural Background

Prior to his termination as an employee and the rise of this cause of action, the petitioner, Brandon Copeland, had been a TDOC employee for seven years and three months. At the time of his dismissal, Mr. Copeland was a Correctional Captain at Bledsoe County Correctional Complex ("Bledsoe"), and he was classified as a preferred service employee of the State of Tennessee.[1]

The incident that led to the termination of Mr. Copeland's employment occurred on June 20, 2020, and involved two correctional officers under his supervision. According to findings made by TDOC Commissioner Tony Parker's office, Correctional Officer Earnest Zile and Correctional Officer Krisann Garmer had conducted a contraband search of a particular inmate's cell at Bledsoe.[2] After the officers completed the search, Officer Zile pushed the inmate, and an altercation between the two ensued. As a result of this "use of force" incident, the Office of Investigations and Conduct ("OIC") investigated the actions of Officer Zile and Officer Garmer. During the investigation, Officer Zile and Officer Garmer informed OIC, independently of one another during their respective interviews, that Mr. Copeland had instructed them to change their declarations contained in their written "use of force" statements.

According to Officer Garmer, Mr. Copeland ordered her to change her statement and replace the phrase, "Officer Zile pushed" the inmate, with, "Officer Zile attempted to cuff" the inmate.[3] Commissioner Parker's findings reflected that Officer Garmer had

---

[1] The Tennessee Supreme Court has previously explained that the Tennessee Excellence, Accountability, and Management Act of 2012 (the "TEAM Act") "reformed Tennessee's state employment personnel system by establishing two separate and distinct employment categories under the umbrella of 'state service': 'executive service' employees and 'preferred service' employees." *Pressley*, 528 S.W.3d at 514. Tennessee Code Annotated § 8-30-202(b) (2022), a provision of the TEAM Act, provides that an "employee in the executive service is an employee at will and serves at the pleasure of the employee's appointing authority." In contrast, a "preferred service employee" is an employee "who has successfully completed a probationary period"; "may be dismissed, demoted, or suspended for cause"; and is "entitled to appeal a dismissal, demotion, or suspension as provided in § 8-30-318." Tenn. Code Ann. § 8-30-316 (a) & (f) (2022). A preferred service employee may also be dismissed when the appointing authority determines that "the good of the service will be served" by such dismissal. Tenn. Code Ann. § 8-30-316(b).

[2] According to the testimony of Carrie Brock, Assistant Director of Human Resources for TDOC, she handled the appeal "on behalf of" Commissioner Parker. Ms. Brock testified that a Step I appeal is an "informal discussion between the employee and the person that issues the disciplinary action." She facilitated the discussion on behalf of Commissioner Parker and submitted to him a summary of the information gathered from the process. Commissioner Parker reviewed the summary and decided to uphold the disciplinary action against Mr. Copeland.

[3] Given the inmate's tangential role in the issues of this case, we will simply refer to him as "the inmate"

volunteered that her changed statement did not reflect accurate information and that the document constituted a falsified report. Commissioner Parker also found that Officer Zile had stated during his OIC interview that Mr. Copeland ordered him to change his statement by adding the phrases, "became more verbally aggressive" and "became actively resistant," with reference to the inmate's role in the altercation. Like Officer Garmer, Officer Zile indicated that these additions were inaccurate. According to Commissioner Parker's findings, Officer Zile believed that Mr. Copeland had ordered him to falsify the report to depict the inmate as more aggressive and "to cover for CO Zile's loss of his temper." Officer Zile indicated that the first draft of his use of force report had been destroyed. Following Officer Zile's and Officer Garmer's interviews, OIC broadened its investigation to encompass Mr. Copeland's actions.

Upon the conclusion of OIC's investigation, Mr. Copeland received a letter of dismissal from the acting warden of Bledsoe, Jonathan Higdon, on July 30, 2020. Acting Warden Higdon informed Mr. Copeland that he was dismissed as an employee with TDOC by reason of his violations of TDOC Administrative Policies and Procedures 302.08, "Code of Conduct & Oath of Correction Department Employees" "in compliance with the Rules of the Department of Human Resources, Chapter 1120-10." Acting Warden Higdon's letter also reflected that OIC's investigation had led to Mr. Copeland's indictment by the Bledsoe County Grand Jury ("the grand jury") on four felony charges and his arrest the previous day. As such, Acting Warden Higdon concluded that Mr. Copeland's termination of employment was necessary for TDOC to "operate safe and secure prisons."

On August 5, 2020, Mr. Copeland filed a "Step I Appeal," appealing his dismissal to the TDOC Commissioner and seeking reinstatement of his employment. As referenced above, Commissioner Parker affirmed Mr. Copeland's dismissal in a letter dated August 18, 2020. Thereafter, Mr. Copeland instituted a "Step II Appeal" on August 31, 2020. Commissioner of Human Resources Juan Williams denied Mr. Copeland's Step II Appeal in a written decision on September 17, 2020. Mr. Copeland subsequently filed a "Step III Appeal" to the Tennessee Board of Appeals ("the Board").

The Board conducted a hearing on January 8, 2021, considering testimony from several witnesses, including Mr. Copeland and Mike Dunn, the OIC special agent who investigated Mr. Copeland's actions. Agent Dunn explained to the Board his investigative process, details concerning his interviews with Officers Zile and Garmer, and the content of his testimony before the grand jury that resulted in Mr. Copeland's indictment. Sergeant William Lewis, an employee of Bledsoe, testified that he did not recall hearing Mr. Copeland tell Officers Zile and Garmer to alter their use of force statements to depict the inmate as more aggressive. Nevertheless, Sergeant Lewis recalled that he had heard Mr. Copeland instruct the officers to indicate in their statements that the least amount of force possible had been used against the inmate. As a result, Officer Garmer "redid her use of

force" statement. In his defense, Mr. Copeland testified that he did not order Officers Zile and Garmer to change their initial statements. Mr. Copeland also presented testimony of Shawn Phillips, the warden of Bledsoe, who reported that Mr. Copeland had informed him that "something wasn't right" about Officer Zile's use of force against the inmate.[4]

On January 11, 2021, the Board entered an order upholding TDOC's disciplinary action against Mr. Copeland. The Board found that Mr. Copeland had "ordered officers under his supervision to reword reports to make it appear as though the inmate was the aggressor, for the purpose of covering up the excessive use of force against an inmate." The Board further delineated that Mr. Copeland's actions constituted violations of TDOC Policy 302.08 and Tennessee Department of Human Resources Rule 1120-10-.03, subsections "(10) Gross Misconduct," "(11) Conduct unbecoming of an employee in state service," "(14) Falsification of an official document relating to or affecting employment," and "(15) Participation in any action that would in any way disrupt or disturb the normal operation of the [ . . . ] department [ . . . ] or that would interfere with the ability of management to manage."

The Board concluded that Mr. Copeland failed to meet his burden of proof, referring to *Pressley*, 528 S.W.3d 506, in which our Supreme Court held that the complainant bears the burden to prove by a preponderance of the evidence that TDOC violated the law or Department of Human Resources rules in terminating his employment. The Board accordingly determined that termination of Mr. Copeland's employment with TDOC was an appropriate and necessary disciplinary action. On March 8, 2021, Mr. Copeland filed in the Davidson County Chancery Court ("trial court") a "Petition for Judicial Review of Final Order of Administrative Order," seeking reversal of the Board's decision. On November 29, 2021, the trial court entered a final order dismissing with prejudice Mr. Copeland's petition. Mr. Copeland timely appealed.

## II. Issues Presented

Mr. Copeland has raised three issues on appeal, which we have restated slightly as follows:

1. Whether the statutory scheme controlling the procedure for disciplinary appeals, pursuant to Tennessee Code Annotated § 4-5-322 and as interpreted by the Tennessee Supreme Court in *Pressley*, 528 S.W.3d 506, provides complainants with due process of law.

2. Whether placing the burden of proof on Mr. Copeland at the first objective presentation of proof without a provision for switching the

---

[4] The distinction between Warden Phillips's and Acting Warden Higdon's roles in managing Bledsoe is unclear from our review of the record.

burden of proof and with abridged discovery, not contemplated in the statutory scheme, placed upon him an impossible burden of proving a negative.

3. Whether Agent Dunn's testimony related to the "grand jury trial outcome" was prejudicial, misleading, and irrelevant.

TDOC raises the following additional issue, slightly restated as follows:

4. Whether Mr. Copeland has waived review of the issues presented to this Court by failing to file a brief that complies with Tennessee Rule of Appellate Procedure 27.

## III.  Standard of Review

Mr. Copeland appeals the Board's decision to uphold TDOC's disciplinary actions against him.  "Under the TEAM Act, Board of Appeals' decisions are subject to judicial review in accordance with the Uniform Administrative Procedures Act ("UAPA")." *Pressley*, 528 S.W.3d at 512.  The TEAM Act "provides a streamlined, three-step appeal process for preferred service employees seeking to challenge a dismissal decision." *Vaulx v. Tenn. Dep't of Transp.*, No. M2020-00193-COA-R3-CV, 2021 WL 2156919, at *1 (Tenn. Ct. App. May 27, 2021).  This Court has explained the appeals process under the TEAM Act, elucidating:

> A preferred service employee may initiate a Step I appeal by filing a written complaint with the Commissioner of the employing agency.  Tenn. Code Ann. § 8-30-318(h)(1)(A).  The Commissioner or his designee investigates the complaint and shares all relevant information with the employee.  *Id.*  After personally meeting with the employee, the Commissioner issues a written decision.  *Id.*

> Dissatisfied employees may request a Step II review by the Commissioner of Human Resources.  *Id.* § 8-30-318(h)(1)(B)(i).  The employee must provide a written argument "setting out why the employee believes the Step I decision was in error and ought to be overturned, reduced, or amended."  *Id.* § 8-30-318(h)(1)(B)(ii).  The Commissioner reviews the complaint and the Step I decision and determines whether additional investigation is necessary.  *Id.* § 8-30-318(h)(1)(B)(i).  Again, the employee is entitled to review all documents and evidence considered by the Commissioner.  *Id.*  After reviewing all the relevant evidence, the Commissioner must provide the employee and the state agency with a written decision.  *Id.*

- 5 -

Either party may initiate a Step III appeal to the Board of Appeals. *Id.* § 8-30-318(h)(1)(C). A Step III review includes a formal hearing before three members of the Board of Appeals. *Id.* § 8-30-318(h)(2). At the outset, an ALJ [Administrative Law Judge] reviews the file to "determine whether all previous procedural requirements were completed properly and in a timely manner." *Id.* § 8-30-318(h)(1)(C). If not, the ALJ must dismiss the appeal. *Id.*

Step III hearings are conducted in accordance with the UAPA, as modified by the TEAM Act. *Id.* An ALJ is present during the hearing to assist the Board. *Id.* § 8-30-318(h)(2). The ALJ ensures that the proceedings comply with the applicable law. *Id.* The ALJ also makes evidentiary decisions, swears witnesses, and advises the Board on the applicable law. *Id.* The ALJ may also decide questions of procedure. *Id.* But the Board decides all factual issues and makes the ultimate decision. *Id.* No petitions for reconsideration are allowed. *Id.* § 8-30-318(i)(7).

*Id.* at *2.

With respect to the standard of review for Board decisions, our High Court in *Pressley* explained:

[T]his Court, as well as the trial and intermediate appellate courts, reviews the Board's decision under the narrowly defined standard of review contained in the UAPA, Tenn. Code Ann. § 4-5-322(h) (2015 & Supp. 2016), rather than under the broad standard of review used in other civil appeals, *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 263-64 (Tenn. 2009). Accordingly, pursuant to Tennessee Code Annotated section 4-5-322(h):

The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1)    In violation of constitutional or statutory provisions;

(2)    In excess of the statutory authority of the agency;

(3)    Made upon unlawful procedure;

(4)    Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

- 6 -

(5)  (A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).[5]  Applying this standard of review, a reviewing court may reverse the Board's decision only if one or more of the five enumerated grounds for reversal are present.  *Id.*; *Davis*, 278 S.W.3d at 264.

*Pressley*, 528 S.W.3d at 512.  Moreover, "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision."  Tenn. Code Ann. § 4-5-322(i) (2022).

We recognize that Mr. Copeland is a *pro se* litigant and respect his decision to proceed self-represented.  With regard to self-represented litigants, this Court has explained:

> *Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden.  *Gray v. Stillman White Co.,* 522 A.2d 737, 741 (R. I. 1987).  Conducting a trial with a *pro se* litigant who is unschooled in the intricacies of evidence and trial practice can be difficult.  *Oko v. Rogers,* 125 Ill. App. 3d 720, 81 Ill. Dec. 72, 75, 466 N.E.2d 658, 661 (1984).  Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training.

*Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988).  Although parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe."  *Hessmer v.*

---

[5] The General Assembly has amended Tennessee Code Annotated § 4-5-322(h)(5), "appli[cable] to disciplinary actions taken or information first received on or after the effective date of" May 18, 2021. Tenn. Pub. Acts, Ch. 461, § 6.  The former version of the statute applies to the present case given that Mr. Copeland received his letter of dismissal on July 30, 2020.

*Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). In addition, this Court must "be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Id.* Moreover, "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *See Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009) (quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)).

IV. Compliance with Tennessee Rule of Appellate Procedure 27

As a threshold matter, we address TDOC's postulate that Mr. Copeland's brief fails to comply with Tennessee Rule of Appellate Procedure 27(a), which provides in pertinent part:

(a) Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

   (1) A table of contents, with references to the pages in the brief;

   (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

   * * *

   (6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

   (7) An argument, which may be preceded by a summary of argument, setting forth:

      (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

      (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)[.]

TDOC contends that Mr. Copeland's brief lacks a table of contents, a table of authorities, and a statement of facts, as required in subsections (1), (2), and (6). TDOC further posits that Mr. Copeland's brief lacks legal analysis and citation to authority as required by subsection (7).

We recognize and respect the fact that Mr. Copeland is representing himself in this appeal, and as a *pro se* appellant, he may have "little familiarity with the rules of this Court." *See City of La Vergne v. LeQuire*, No. M2016-00028-COA-R3-CV, 2016 WL 6124117, at *2 (Tenn. Ct. App. Oct. 19, 2016). For this reason, this Court has previously stated that "[t]he courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs." *Hessmer*, 138 S.W.3d at 903. Furthermore, courts are encouraged to "give effect to the substance, rather than the form or terminology, of a pro se litigant's papers." *Id.* at 904. Nevertheless, "the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary" and "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Id.* at 903.

With these principles in mind, we agree with TDOC that Mr. Copeland's brief fails to comply with certain requirements of Rule 27. Mr. Copeland did not present a table of contents or a table of authorities in his brief, and he has provided sparse legal authority and argument. However, Mr. Copeland presents a factual background of the case, provides the standard of review, enumerates the issues raised, and cites to the record. Although Mr. Copeland presents a dearth of legal authority and argument, we do not find his brief to be so deficient that he has waived the entirety of his appeal.

This Court may "in its discretion, suspend or relax the procedural rules in a given case for good cause." *City of La Vergne*, 2016 WL 6124117, at *2 (citing Tenn. R. App. P. 2). In addition, "[t]he Tennessee Rules of Appellate Procedure should be construed to afford all parties a hearing on the merits." *Paehler v. Union Planters Nat'l Bank*, 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997) (deciding the appeal on the merits despite acknowledging that the appellant failed to comply with Rule 27); *see also* Tenn. R. App. P. 1 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every proceeding on its merits."). Upon careful consideration and in light of Mr. Copeland's self-represented status, this Court will consider Mr. Copeland's appeal so as to give effect to the substance of his brief and decide the case on the merits. *See City of La Vergne*, 2016 WL 6124117, at *2.

### V. Alleged Violation of Constitutional Provisions Pursuant to
### Tennessee Code Annotated § 4-5-322(h)(1)

In an attempt to seek reversal of his dismissal pursuant to Tennessee Code Annotated § 4-5-322(h)(1), Mr. Copeland challenges the Tennessee Supreme Court's

holdings in *Pressley* that "preferred service employees do not possess a property interest in their continued employment with the State of Tennessee" and that the petitioning party, "the 'party [seeking] to change the present state of affairs' with regard to his termination," bears "the ultimate burden of proof." *Pressley*, 528 S.W.3d at 519, 523. Our High Court's decision in *Pressley* previously has been challenged by a former preferred service employee in *Vaulx*, 2021 WL 2156919, at *1. In *Vaulx*, the former employee, like Mr. Copeland, posited that requiring him to bear the burden of proof at his Step III hearing was "unfair and possibly unconstitutional." *Id.* at *2. This Court dismissed the former employee's argument, properly concluding that it had "no authority to overrule or modify Supreme Court opinions." *Id.* (quoting *Bloodworth v. Stuart*, 428 S.W.2d 786, 789 (Tenn. 1968)). We reaffirm this principle and likewise conclude that we lack authority to overrule or modify the Tennessee Supreme Court's holdings in *Pressley*. Mr. Copeland's argument on this point is therefore unavailing.

In a related issue, Mr. Copeland also requests that this Court consider:

> Whether placing the burden of proof on the Employee at the first objective presentation of proof without a provision for switching the burden of proof and with abridged discovery, not contemplated in the statutory scheme, places an impossible burden of proving a negative on the employee.

Mr. Copeland asserts that he carried the burden of proof "sufficient under the *Pressley* opinion given that the following testimony as referenced to the record was produced and at least required a switching of the burden of proof, which the *Pressley* Court did not address." We reject Mr. Copeland's argument inasmuch as his second issue appears to constitute another avenue to seek this Court's reversal or modification of *Pressley*. Moreover, Mr. Copeland does not provide sufficient legal authority or argument to support his assertion that, as the petitioning party, he bore the "impossible burden of proving a negative." Mr. Copeland also fails to provide legal authority, argument, or any explanation for his apparent qualms with the alleged "abridged discovery" available to him and the absence of a statutory or procedural provision "for switching the burden of proof."

Mr. Copeland states in his appellate brief that he submits the Davidson County Chancery Court's opinion in *Vaulx v. Tenn. Dep't of Transp.* as "a brief of the matter." We discern that the below-quoted paragraph from the lower court in *Vaulx* is the only argument that could be interpreted as relating to this issue. The lower court in *Vaulx*, as quoted by Mr. Copeland, opined:

> Although this Court is of the opinion that requiring a preferred service state employee to bear the burden of disproving (or even merely the burden of going forward to challenge) the proponent-employer's charges violates fundamental fairness, the Court has a clear duty to follow *Pressley*. In the Court's view, this fundamental unfairness is especially true where, as here,

- 10 -

the employee has to defend his/her employment in an administrative proceeding where there is little or no opportunity to conduct discovery and where the administrative proceeding is the employee's only opportunity for a *de novo* hearing. Here, this unfairness is further exacerbated by the administrative tribunal's decision to grant judgment for the employer without requiring it to put on any proof whatsoever. In this context, summary decisions in favor of the employer at the administrative level, where no representative of the proponent-employer is even required to testify about the truth, context, or seriousness of the proffered charges or have those charges meaningfully reviewed by the finder of fact, should be disfavored. Having no guidance from the appellate courts on this precise situation, however, the Court is obligated to follow the broad holding of the Tennessee Supreme Court in *Pressley*.

We emphasize that this Court rejected the former employee's challenge of *Pressley* in *Vaulx* and also found that the former employee had failed to present sufficient evidence to meet his burden of proof during his Step III appeal. *Vaulx*, 2021 WL 2156919, at *2, 4. Furthermore, Mr. Copeland fails to explain the significance of this quoted paragraph from the trial court in *Vaulx* to the facts of his own case.

Other than the quoted paragraph from the trial court in *Vaulx*, Mr. Copeland has provided no argument or explanation relative to his second issue on appeal. Inasmuch as Mr. Copeland has failed to adequately and clearly present his second issue on appeal and failed to present an argument with respect to this issue, we are constrained to find the issue waived. *See Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts . . . to research or construct a litigant's case or arguments for him . . . , and where a party fails to develop an argument in support of his . . . contention or merely constructs a skeletal argument, the issue is waived.").

## VI. Alleged Prejudicial Testimony

Mr. Copeland objects to Agent Dunn's testimony regarding "the outcome of the Grand Jury trial" during the Step III hearing, describing it as "prejudicial, misleading," and irrelevant. Mr. Copeland, however, does not explain how Agent Dunn's testimony was prejudicial, misleading, or irrelevant, and does not refer to Agent Dunn's statements about the grand jury or his indictment in his appellate brief. Because Mr. Copeland provides no more than an assertion with respect to the challenged testimony, we must also find this issue waived. *See Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000) ("[A]n issue is waived where it is simply raised without any argument regarding its merits.").

## VII. Alleged Absence of Substantial and Material Evidence Pursuant to Tennessee Code Annotated § 4-5-322(h)(5)

Although Mr. Copeland does not challenge the Board's finding that he did not meet his burden of proof in an enumerated issue statement, the bulk of his brief is a recitation of the testimony elicited during the Step III hearing and an effort to demonstrate that the Board's findings and conclusions were unsupported by substantial and material evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5). Therefore, in order to "give effect to the substance" of Mr. Copeland's brief, *see Hessmer*, 138 S.W.3d at 904, and to decide this appeal on the merits, we will review the evidence presented to the Board during the Step III hearing. In doing so, we also note that TDOC addressed the issue on appeal without claiming to be unfairly prejudiced by our consideration thereof. *See City of La Vergne*, 2016 WL 6124117, at *2 (finding good cause to decide the merits of the appeal when the deficiencies in the appellant's brief did not impede the Court's ability to do so, the appellant's argument was clear, and the appellee did not claim that it would be unfairly prejudiced).

As referenced previously, the Tennessee Supreme Court in *Pressley* held that the petitioning party under the TEAM Act is the "'party [seeking] to change the present state of affairs' with regard to his termination" and is "assigned the ultimate burden of proof." *Pressley*, 528 S.W.3d 506, 523 (Tenn. 2017). Our High Court further instructed that the burden of proof for the petitioning party was by a preponderance of the evidence. *Id.* at 522 (citing Tenn. Comp. R. & Regs. 1360-04-01-.02(7)). As the petitioner, Mr. Copeland bore the burden of proving by a preponderance of the evidence that TDOC violated a "law, rule, or policy" in terminating his employment. *See* Tenn. Code Ann. § 8-30-318(h)(1)(c) (2016) ("If the procedural requirements have been met, the board of appeals shall conduct proceedings in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, as modified herein, to determine if the law, rule, or policy specified in the complaint was violated."). Mr. Copeland contends that he carried his burden of proof given the testimony presented during the Board hearing.

According to Mr. Copeland, Warden Phillips testified that Mr. Copeland had reported to him that he could not see what happened inside the inmate's cell due to the angle of the camera but that "something did not look right" about Officer Zile's use of force. In addition, Assistant Director of Human Resources, Carrie Brock, testified that Warden Phillips had indicated that he had "issues with the OIC report" during the Step I appeal. In addition, Mr. Copeland asserts that Sergeant Lewis testified that Mr. Copeland did not influence Officers Zile and Garmer to change their statements and that he did not witness him do anything against policy and procedure.

According to Mr. Copeland, Agent Dunn articulated that when an officer is involved in a "use of force" incident, the officer completes "an accident injury form" with medical staff before filling out the "use of force" statement with the supervisor. Agent Dunn testified that the accident injury forms completed by Officers Zile and Garmer also

had depicted the inmate as the aggressor. According to Mr. Copeland, this fact indicates that Officers Zile and Garmer had already depicted the inmate as the aggressor in their accident injury forms prior to completing their "use of force" statements approved by him. In addition, Mr. Copeland points out that Agent Dunn testified that it was possible that Mr. Copeland had neglected to view the video from the correctly angled camera by mistake and that Agent Dunn previously had been involved in cases when employees were wrongfully terminated. Mr. Copeland notes that Agent Dunn explained that his investigative findings were predicated upon the statements made by the officers and their credibility. However, as Mr. Copeland asserts, Agent Dunn testified also that one of the officers was later arrested and dismissed from employment with TDOC for filing a false police report.

In his brief on appeal, Mr. Copeland reflects on his own testimony, stating that he had followed "policy and post orders by placing the inmate on Pending Investigation and turning the matter over to the Internal Affairs office." He denied committing any criminal acts and insisted that he would have sent Officer Zile home immediately and "sent a different email" if he had seen the video from the correctly angled camera.

Upon our review of the record, we agree with the trial court that the Board's decision to uphold Mr. Copeland's dismissal was predicated on substantial and material evidence. This Court has previously detailed the standard by which it reviews the Board's decision for substantial and material evidence, stating:

> "In determining the substantiality of the evidence, [we] take into account whatever in the record fairly detracts from its weight," but we do "not substitute [our] judgment for that of the agency as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 4-5-322(h)(5)(A)(ii).
>
> The substantial and material evidence standard "requires something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988) (citations omitted). The standard does not justify reversal simply because the evidence could support another result. *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001). Instead the decision should be upheld so long as the administrative record "furnishes a reasonably sound factual basis for the decision being reviewed." *City of Memphis v. Civ. Serv. Comm'n*, 216 S.W.3d 311, 317 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993)).

*Davis v. Tenn. Bd. of Appeals*, No. M2020-01255-COA-R3-CV, 2022 WL 6920364, at *4 (Tenn. Ct. App. Oct. 12, 2022) (emphasis added).

Concerning Warden Phillips's testimony, we agree with the trial court that his testimony favorable to Mr. Copeland's position does not outweigh the testimony of Agent Dunn. Although Warden Phillips may have disagreed with the OIC's investigative findings and testified that Mr. Copeland had informed him that "something wasn't right" with Officer Zile's conduct at the time of the incident, this testimony does not detract from or outweigh Agent Dunn's testimony that Officer Zile and Officer Garmer, independently of one another, informed him that Mr. Copeland had ordered them to change their use of force statements so as to minimize Officer Zile's culpability. Agent Dunn further opined that he believed Mr. Copeland had been deceptive during his interview with OIC and that it was unbelievable that a correctional captain with Mr. Copeland's experience would neglect to view the other video from the correctly angled camera, contradicting Mr. Copeland's assertion during the interview that he had been unable to witness the altercation due to the camera angle. Agent Dunn also informed the Board that he had testified before the grand jury and that the grand jury had indicted Mr. Copeland for his actions at Bledsoe on the day of the altercation. During the hearing, the Board members found Agent Dunn "very convincing," "compelling," and "credible."

Although the Board did not explicitly make a credibility determination in its written order, its findings of fact and conclusions of law imply that it credited Agent Dunn's testimony over Mr. Copeland's. *See Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002) ("[T]he trial court's findings with respect to credibility and the weight of the evidence . . . generally may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case."). We afford great weight to the Board's credibility determinations given that it was the body that heard testimony. *See Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005) (concluding that the reviewing commission's credibility determinations should be "given great weight by any reviewing court").

Mr. Copeland also proffered Sergeant Lewis as a purportedly favorable witness. Although Sergeant Lewis testified that he had not heard Mr. Copeland tell Officers Zile and Garmer to change their statements to depict the inmate as more aggressive, he did indicate that had heard Mr. Copeland tell "them to put in [their use of force statements] that the least amount of force necessary was taken and to add it to their -- ."[6] Sergeant Lewis also related that Officer Garmer "redid" her "use of force" statement after Mr. Copeland told her to add that the "least amount of force possible was used" against the inmate. Although Sergeant Lewis reported that he did not witness Mr. Copeland "do anything against policy or procedure," Sergeant Lewis's interpretation of Mr. Copeland's actions provides little support for Mr. Copeland's position given that Sergeant Lewis also substantiated Agent Dunn's finding that Mr. Copeland had ordered the officers to change their statements. Sergeant Lewis's testimony supported the Board's finding that Mr. Copeland had ordered the officers to reword their statements.

---

[6] Sergeant Lewis did not finish this sentence during the hearing.

Upon thorough review of the record and testimony presented before the Board, we agree with the Board's conclusion that TDOC had cause to terminate Mr. Copeland and conclude that the Board's decision to uphold his dismissal from employment was supported by substantial and material evidence. We therefore affirm the trial court's order dismissing Mr. Copeland's petition for judicial review with prejudice.

VIII. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court dismissing with prejudice Mr. Copeland's petition. We remand this case for collection of costs below. Costs on appeal are taxed to the appellant, Brandon Copeland.

s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE